---

(No. 11789.—Reversed and remanded.)
THE CITY OF CHICAGO, Appellee, *vs.* THE MUNICIPAL ENGINEERING AND CONSTRUCTION COMPANY, Appellant.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

SPECIAL ASSESSMENTS—*when the court may sustain objection to a particular part of sewer ordinance as unreasonable.* Whether or not the whole system of sewers provided for by ordinance for a practically uninhabited region is reasonable need not be considered in determining the reasonableness of a part of the ordinance providing for a separate and independent portion of the system which does not serve any other territory or any other part of the system. (*Washburn* v. *City of Chicago,* 198 Ill. 506, distinguished.)

APPEAL from the County Court of Cook county; the Hon. S. N. HOOVER, Judge, presiding.

ISAAC B. LIPSON, and SYLVANUS GEORGE LEVY, (GEO. A. MASON, of counsel,) for appellant.

HARRY F. ATWOOD, GEORGE P. FOSTER, and OTTO W. ULRICH, (SAMUEL A. ETTELSON, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county overruling appellant's legal objections to an ordinance providing for lateral sewers on appellant's property and confirming an assessment after reducing it twelve and one-half per cent.

The ordinance provides for a main sewer in South Kedzie avenue, in Chicago, from Seventy-first street to Eighty-seventh street, with a connecting sewer on Columbus avenue running southwesterly from Seventy-ninth street and Kedzie avenue to a subdivision known as Clarkdale, with certain lateral sewers in Clarkdale and the lateral sewers in question through Mitchell's addition to Clarkdale. The addition is a subdivision of eighty acres of land lying west of South Kedzie avenue, half a mile long east and west and a quarter of a mile wide north and south. The appellant owns 362 lots in that subdivision, and the ordinance provides for lateral sewers running from the main sewer in Kedzie avenue through the five streets of the subdivision, Eighty-third street, Eighty-third place, Eighty-fourth street, Eighty-fourth place and Eighty-fifth street, a distance of one-half mile on each street, or two and one-half miles of sewers in the subdivision. The ordinance provides for no other lateral sewers except to a limited extent in Clarkdale, where there are a few houses, and they are disconnected with these sewers. These five sewers are separate and independent from the general system, neither serving nor affording any sewer connection with any other property, and the appellant's lots were assessed more than $15,000. The objection was that the ordinance was unreasonable, oppressive and confiscatory because the subdivision was practically uninhabited and open prairie, where there was no occasion or use for sewers. The court heard the evidence and expressed his opinion, as a matter of fact, that the ordinance, so far as it provided for the five lateral sewers through

the subdivision, was unreasonable, but his view of the law was that the court could not sustain the objection unless the entire system was unreasonable, and the legal objections were therefore overruled.

Extending north from Seventy-first street,—the starting point of the main sewer,—up to Sixty-seventh street there is a vacant field, used only for a golf links. From Seventy-first street south along the line of the main sewer there are only a few houses of small value, and there are no industries, factories, public buildings or business interests of any description near the avenue nor within a radius of one mile from any point of the subdivision. The nearest public transportation line is at Leavitt and Seventy-ninth streets,—a mile and three-quarters from the nearest point of the subdivision,—and the next nearest is on Kedzie avenue, north of the golf links, two miles north of the subdivision. West of the subdivision, at Clarkdale, (now called Ashburne Station,) there is a depot of the Wabash and Grand Trunk railways, from which there are four trains a day over the Wabash and two on the Grand Trunk to the Polk street depot, a distance of twelve and one-half miles. From Seventy-third street south there are four or five old houses, the most expensive one being worth about $1500 and none of the others being worth more than $500. The whole country is open prairie or used for truck farms, and south, as far as the eye can see from Seventy-first street, there are no other houses. Two tracts on the east side of Kedzie avenue have been platted,—one of eighty acres and the other of about 100 acres,—and there are no houses on either. The Baltimore and Ohio railroad has a station three-quarters of a mile east of the subdivision, called Edgemoor, and there is a subdivision there of eighty acres platted thirty years ago, with paved streets and sidewalks, on which there are four houses. At Clarkdale (or Ashburne Station) there are a few scattered houses. On the subdivision through which these sewers are projected there

are thirteen or fourteen old buildings occupied and used in connection with truck farms in the neighborhood, but the whole subdivision is otherwise uninhabited and is all grown up with grass and weeds. There are no passable roads in the whole subdivision and no visible mark to distinguish the location of lots. There is no public water supply in the vicinity or on Kedzie avenue south of the north side of the golf links, two miles away. The subdivision was laid out in 1890, and there is not, and never has been, any market or demand for lots. There is now no market for the property, except there have been some rumored sales of lots south of the subdivision for cemeteries, of which there are several in that vicinity. A real estate broker testifying for the city explained at length the nature of the improvements on Kedzie avenue, two miles north of the subdivision, and the advantages and prospects of other territory about as far away. He expressed the opinion that this region was "ripe" for industries and manufacturing enterprises, but his conclusion was not justified by any fact stated. How that could be as applied to this subdivision, without water supply, passable streets or sidewalks, and where anyone employed by or connected with industries or manufacturing enterprises would have to walk a mile and three-quarters to any feasible line of transportation, we are unable to discern. Another witness thought the crying need of the subdivision was sewers, and that the lack of sewers had hindered the property more than anything else and caused its low value, although there was also a need for water and no public water supply of any sort near the property. The sewers would be dry except for such rain water as might run into them, but it is suggested by counsel for the city that the residents could use the sewers by putting up a tank or barrel at a proper elevation to furnish pressure and send the water into the sewers and getting the water into the tank or barrel by some means, but the only testimony on that subject was that the shacks on the subdivision were not

built for the uses of a sewer and a tank would cost more than one of the houses, besides the cost and effort of getting the water into the tank.

The argument which prevailed with the county court is the material one presented here: that the question whether the ordinance is reasonable or not must be determined with reference to the whole territory reached by the sewers. What the conclusion might be if the whole system of sewers through a practically uninhabited region were considered is immaterial, because the objection is to a separate and independent portion of the system which does not serve any other territory or any other part of the system. The principal reliance of the city is the decision in *Washburn* v. *City of Chicago,* 198 Ill. 506, where Washburn owned, unsubdivided, a lot of ten acres and a portion of another lot of five acres, surrounded by territory subdivided into streets, alleys, lots and blocks. The ordinance provided for the construction of a main sewer running between Washburn's lots and serving subdivided property on three sides of it. Manifestly, whether the ordinance in that case was unreasonable could not be determined by only considering property which the owner left unsubdivided and was of the value of from $1000 to $1200 an acre put to a proper use but was used for truck gardens, for which it was worth but a comparatively trifling sum. The owner cannot prevent an improvement necessary for surrounding subdivided property by declining to subdivide his and adapt it to a proper use, but this case, where the eighty acres has been subdivided since 1890 and there is no use for sewers and adjoining property would derive no benefit from them, is different. The sewer running southwest in Columbus avenue from Seventy-ninth street and Kedzie avenue to Clarkdale will serve the grocery store and the few houses at Clarkdale. The assessment on corner lots ranged from $51.90 to $53.60 a lot and on other lots $41.50, and even as reduced was equal to the market value of the lots. The provision of the ordinance for the

lateral sewers in question is oppressive and unreasonable and therefore void.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*